UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

DAVID HILL,
    Plaintiff,

v.                                        Case No. 3:16cv1656(VLB)

WARDEN CHAPDELAINE, ET AL.,
    Defendants.

## INITIAL REVIEW ORDER

The plaintiff, David Hill, is currently confined at Cheshire Correctional Institution. He has filed a complaint pursuant to 42 U.S.C. § 1983 naming Warden Chapdelaine and Correctional Officers Yekel, John Doe #1, and John Doe #2 as defendants. For the reasons set forth below, the complaint is dismissed in part.

Pursuant to 28 U.S.C. § 1915A(b), the Court must review prisoner civil complaints against governmental actors and "dismiss . . . any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." *Id.* Rule 8 of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

Although detailed allegations are not required, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation

marks and citations omitted).  A complaint that includes only "'labels and conclusions,' 'a formulaic recitation of the elements of a cause of action' or 'naked assertion[s]' devoid of 'further factual enhancement,'" does not meet the facial plausibility standard.  *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)).  Although courts still have an obligation to interpret "a *pro se* complaint liberally," the complaint must include sufficient factual allegations to meet the standard of facial plausibility.  *See Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citations omitted).

The plaintiff asserts that on January 23, 2014, at MacDougall Correctional Institution ("MacDougall"), he was a food worker in N-pod unit.  Correctional Officers Yekel, John Doe #1, and John Doe #2 were assigned to work in N-pod unit that day.  At approximately 10:40 a.m., Officers Yekel, John Doe #1, and John Doe #2 left N-pod unit.  At approximately 10:50 a.m., two unidentified inmates attacked the plaintiff from behind as he stood at the top of the staircase in N-pod unit.  The two inmates kicked, punched and stomped on the plaintiff and then threw him down the stairway.

A correctional employee called a code and other officers arrived at the scene.  Officers escorted the plaintiff to a triage area to be evaluated.   After examining the plaintiff, medical staff recommended that the plaintiff be transported to the University of Connecticut Health Center ("UCONN") due to the nature of his injuries.

Medical staff at UCONN treated the plaintiff's injuries.  The plaintiff subsequently spent five days in the infirmary at MacDougall.  On January 31, 2014, the plaintiff returned to N-pod unit.

The plaintiff learned from other inmates that Correctional Officer Yekel had called him a snitch and that is the reason two inmates assaulted him. The plaintiff claims that on many occasions prior to the assault, he had heard Officer Yekel refer to other inmate as snitches.

The plaintiff filed multiple requests and grievances regarding the incident. He claims that he did not receive responses to any of his requests or grievances.

The plaintiff filed a health service request on July 12, 2014. MacDougall medical staff resolved the issues with regard to treatment for the plaintiff's injuries. The plaintiff claims to have suffered permanent injuries to his neck, lower back, left ear and left eye. The plaintiff seeks a declaratory judgment and monetary damages.

I.  Official Capacity Claims – Money Damages

To the extent that the plaintiff seeks monetary damages from the defendants in their official capacities, those claims are barred by the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. 159 (1985) (Eleventh Amendment, which protects the state from suits for monetary relief, also protects state officials sued for damages in their official capacity); *Quern v. Jordan*, 440 U.S. 332, 342 (1979) (Section 1983 does not override a state's Eleventh Amendment immunity). All claims for monetary damages against the defendants in their official capacities are dismissed pursuant to 28 U.S.C. § 1915A(b)(2).

II.  Official Capacity Claims – Declaratory Relief

The plaintiff seeks declaratory relief from the defendants in their official capacities. He asks the court to declare that the conduct of the defendants violated

3

his rights under the Eighth and Fourteenth Amendments to the United States Constitution.

The purpose of the Declaratory Judgment Act is to allow parties to resolve claims before either side suffers great harm.  *See In re Combustion Equip. Assoc.,* 838 F.2d 35, 37 (2d Cir. 1988).  In *Ex Parte Young,* 209 U.S. 123 (1908), the Supreme Court held that an exception to the Eleventh Amendment's grant of sovereign immunity from suit existed to permit a plaintiff to sue a state official acting in his or her official capacity for prospective injunctive relief for continuing violations of federal law.  *Id.* at 155-56.  The exception to Eleventh Amendment immunity, however, does not apply to claims against state officials seeking declaratory or injunctive relief for prior violations of federal law.  *See Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc.,* 506 U.S. 139, 146 (1993) (the Eleventh Amendment "does not permit judgments against state officers declaring that they violated federal law in the past"); *Green v. Mansour,* 474 U.S. 64, 68 (1985) ("We have refused to extend the reasoning of *Young* . . . to claims for retrospective relief") (citations omitted); *Ward v. Thomas,* 207 F.3d 114, 119-20 (2d Cir. 2000) (Eleventh Amendment bars retrospective relief in form of declaration that State of Connecticut violated federal law in the past).

The plaintiff's request for a declaration that the defendants violated his federal constitutional rights in 2014 cannot be properly characterized as "prospective" because the plaintiff does not allege how such relief would remedy a future constitutional violation by the defendants.  Thus, the plaintiff's request for

4

declaratory relief does not meet the exception to the Eleventh Amendment immunity set forth in *Ex Parte Young*.

Absent any request for prospective relief to remedy ongoing violations of federal law, a declaration that the defendants violated the plaintiff's constitutional rights in the past is barred by the Eleventh Amendment.  *See Green*, 474 U.S. at 71-73 (if there is no allegation of an ongoing violation of federal law, the Eleventh Amendment prevents federal courts from providing notice relief or a declaratory judgment that state officials violated federal law in the past); *Nicholson v. Lenczewski*, 356 F. Supp. 2d 157, 162 (D. Conn. 2005) (dismissing claim for retrospective declaratory relief in the form of a statement that the conduct of certain defendants violated his rights because it was barred by the Eleventh Amendment). The request for declaratory relief is dismissed.  *See* 28 U.S.C. § 1915A(b)(1).

III.     Fourteenth Amendment Claim

The plaintiff alleges that the defendants violated his Fourteenth Amendment due process rights when they failed to protect him from assault by other inmates on January 23, 2014.  Substantive due process protections are "limited to governmental action that is arbitrary . . . conscience-shocking . . . or oppressive in a constitutional sense . . . but not against government action that is incorrect or ill-advised." *Lowrance v. Achtyl*, 20 F.3d 529, 537 (2d Cir. 1994) (citations and internal quotation marks omitted).  The plaintiff has not alleged facts to suggest that the conduct of the defendants in subjecting him to conditions that resulted in an assault by other inmates was so outrageous, arbitrary or conscience-shocking as to constitute a

violation of his fundamental rights.  *See Emmerling v. Town of Richmond*, 434 F. App'x 10, 12 (2d Cir. 2011) (affirming dismissal of a substantive due process claim when plaintiff "failed to allege any behavior . . . that could be reasonably considered egregious, outrageous or conscience-shocking."); *Dellutri v. Village of Elmsford*, 895 F. Supp. 2d 555, 574 (S.D.N.Y. 2012) (dismissing without prejudice a claim where "[t]he conduct alleged by Plaintiff simply does not rise to the level of being so outrageous as to violate Plaintiff's substantive due process right.").

Furthermore, the Supreme Court has held that "the protections of the Due Process Clause, whether procedural or substantive, are just not triggered by lack of due care by prison officials." *Davidson v. Cannon*, 474 U.S. 344, 348 (1986) (citing *Daniels v. Williams*, 474 U.S. 327 (1986)).  Thus, the plaintiff's claim that the defendants negligently or carelessly failed to protect him from harm does not rise to the level of a constitutional violation.  *See id.* at 347-48 (prison officials' "lack of due care in this case led to serious injury, but that lack of care simply does not approach the sort of abusive government conduct that the Due Process Clause was designed to prevent . . . . The guarantee of due process has never been understood to mean that the State must guarantee due care on the part of its officials").  Accordingly, the Fourteenth Amendment substantive due process claims are dismissed.  *See* 28 U.S.C. § 1915A(b)(1).

IV.     Eighth Amendment Claims

The plaintiff contends that Officers Yekel and Does #1 and #2 were deliberately indifferent to his safety and failed to protect him from harm in violation of his Eighth

6

Amendment rights.  He claims that Warden Chapdelaine failed to train or supervise the other defendants.

### A. Warden Carol Chapdelaine

The plaintiff claims that Warden Chapdelaine violated his federal constitutional rights by failing to properly train her staff regarding proper procedures, conduct, and policies in connection with the assault that occurred on January 23, 2014.  To recover money damages under section 1983, plaintiff must show that the Warden was personally involved in the constitutional violations.  *See Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).  Supervisory officials cannot be held liable under section 1983 solely for the acts of their subordinates.  *See Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985).

The plaintiff may show personal involvement through evidence of one or more of the following: (1) that the defendant actually and directly participated in the alleged unconstitutional acts; (2) that the defendant failed to remedy a wrong after being informed of the wrong through a report or appeal; (3) that the defendant created or approved a policy or custom that sanctioned objectionable conduct which rose to the level of a constitutional violation or allowed such a policy or custom to continue; (4) that the defendant was grossly negligent in supervising the correctional officers who committed the constitutional violation; or (5) that the defendant failed to take action in response to information regarding the occurrence of unconstitutional conduct. *See Colon,* 58 F.3d at 873.  In addition, the plaintiff must demonstrate an affirmative

causal link between the inaction of the supervisory official and his injury. *See Poe v. Leonard*, 282 F.3d 123, 140 (2d Cir. 2002).

In *Ashcroft v. Iqbal*, the Supreme Court addressed the issue of supervisory liability and concluded that a supervisor can be held liable only "through the official's own individual actions." 556 U.S. 662, 676 (2009). Although this decision arguably casts doubt on the continued viability of some of the categories for supervisory liability set forth in *Colon,* the Second Circuit has not revisited the criteria for supervisory liability following *Iqbal*. *See Raspardo v. Carlone*, 770 F.3d 97, 117 (2d Cir. 2014) ("We have not yet determined the contours of the supervisory liability test . . . after Iqbal."); *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013) (noting that decision in *Iqbal* "may have heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations," but finding it unnecessary to reach the impact of *Iqbal* on the personal involvement requirements set forth in *Colon*). Because it is unclear as to whether *Iqbal* overrules or limits *Colon*, the Court will continue to apply the categories for supervisory liability set forth by the Second Circuit.

The plaintiff does not mention Warden Chapdelaine in the body of the complaint. He does not allege that the Warden was present during or otherwise involved in the assault or the failure to protect him from harm. Nor does he allege that he made the Warden aware of the incident after it occurred. Furthermore, there are no facts to suggest that the Warden was grossly negligent in supervising the officers involved in the failure to protect the plaintiff from harm. The plaintiff's

8

conclusory allegation that Warden Chapdelaine failed to properly train correctional staff at Macougall does not state a plausible claim for supervisory liability.  *See Styles v. Goord*, 431 F. App'x 31, 33 (2d Cir. 2011) ("The mere fact that a defendant possesses supervisory authority is insufficient to demonstrate liability for failure to supervise under 1983."); *Landron v. City of New York*, No. 14 CIV. 1046(NRB), 2014 WL 6433313, at *4-5 (S.D.N.Y. Nov. 7, 2014) (unsupported allegation that "Warden grossly failed to train and properly supervise his corrections officers" did not demonstrate warden's involvement in decision to confine plaintiff in the punitive segregation unit for eighteen additional days and was "inadequate to [state] a claim for supervisory liability under Section 1983") (internal quotation marks omitted). Thus, the plaintiff has failed to allege sufficient facts to state a plausible claim of supervisory liability on the part of the Warden based on the misconduct of the other officers who were involved in the incident in which he was assaulted and over whom she might have authority.  Because the plaintiff has failed to assert facts to show or infer the personal involvement of Warden Chapdelaine in the alleged deliberate indifference to his safety or health, the Eighth Amendment claims against her are dismissed.  *See* 28 U.S.C. § 1915A(b)(1).

    B.    Officers Yekel, Doe #1, and Doe #2

The plaintiff alleges that defendants Yekel, Doe #1 and Doe #2 created a situation in which he might be and was assaulted by another inmate.  The Eighth Amendment imposes a duty on prison officials "to take reasonable measures to guarantee the safety of inmates in their custody."  *Hayes v. New York City Dep't of*

9

*Corrections*, 84 F.3d 614, 620 (2d Cir. 1996) (citing *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994)). Thus, "[a] prison official's deliberate indifference to a substantial risk of serious harm to an inmate violates the Eighth Amendment" and will give rise to a failure to protect claim. *Farmer*, 511 U.S. at 828 (internal quotation marks and citations omitted). To state a claim of failure to protect, the plaintiff must show that the defendant prison officials possessed culpable intent, that is, the officials knew that the inmate faced a substantial risk to his health or safety and disregarded that risk by failing take corrective action. *Id.* at 834. Mere negligence does not constitute conduct that meets the element of subjective intent. Evidence that a risk was "obvious or otherwise must have been known to a defendant" may be sufficient for a fact finder to conclude that the defendant was actually aware of the risk. *Brock v. Wright*, 315 F.3d 158, 164 (2d Cir. 2003).

The plaintiff alleges that the Doe Officers should not have left the housing unit where he was working because no other officers were on duty in the unit at the time. He claims that by doing so, the Doe Officers violated several sections of a Department of Correction Directive addressing employee conduct. Violations of state law, however, do not state a claim under section 1983. Furthermore, there are no facts to suggest that the Doe Officers left the unit knowing the plaintiff might be assaulted or with the intent that he be assaulted. Nor are there any facts indicating that the Doe Officers were aware of any threats against the plaintiff or that the plaintiff had made them aware that his safety might be at risk. Thus, the allegations against the Doe Officers constitute negligence, at most. Such claims are not

cognizable in a section 1983 action. *See Hayes*, 84 F.3d at 620 ("To state a cognizable section 1983 claim, the prisoner must allege actions or omissions sufficient to demonstrate deliberate indifference; mere negligence will not suffice."). The claims that John Doe #1 and John Doe #2 neglected their duties by leaving the housing unit just before the plaintiff was assaulted are dismissed. *See* 28 U.S.C. § 1915A(b)(1).

The claim of failure to protect or deliberate indifference to safety against Officer Yekel will proceed. Identifying an inmate as a snitch poses a threat to the inmate's health and safety. *See Campbell v. Gardiner*, No. 12-CV-6003P, 2014 WL 906160, at *4 (W.D.N.Y. Mar. 7, 2014) (citing cases). The plaintiff has alleged that Officer Yekel routinely and intentionally called him and other inmates a snitch. Yekel's alleged conduct, if true, exposed the plaintiff, other inmates, and corrections officers and other prison staff to an unreasonable risk of harm with reckless disregard for the safety and security of the facility and its occupants, by creating a volatile environment susceptible to potentially lethal violence at any time. Moreover, the plaintiff actually suffered physical injuries due to the alleged egregious conduct of Officer Yekel. Such conduct is a flagrant violation of a corrections officer's duty to protect inmates in the custody of prison officials and state a plausible claim of failure to protect from harm and deliberate indifference to safety under the Eighth Amendment. *See Medina v.* Whitehead, No. 3:13-cv-885(VLB), 2014 WL 3697886, at *2 (D. Conn. July 24, 2014) (denying motion to dismiss because inmate claimed that "as a result of the defendant's comments labeling him as a snitch and suggesting that he

should be assaulted, four inmates tried to fight with him"). The Eighth Amendment failure to protect and deliberate indifference to safety claims will proceed against defendant Yekel his individual capacity.

ORDERS

The Court enters the following orders:

(1) The claims against all defendants in their official capacities are DISMISSED pursuant to 28 U.S.C. § 1915A(b)(1) and (2). The Fourteenth Amendment claims against all defendants in their individual capacities as well as the Eighth Amendment claims against Warden Chapdelaine, Correctional Officer John Doe #1, and Correctional Officer John Doe #2 in their individual capacities are DISMISSED pursuant to 28 U.S.C. § 1915A(b)(1). Thus, all claims against defendants Chapdelaine, Doe #1, and Doe #2 have been DISMISSED. The Eighth Amendment failure to protect and deliberate indifference to health and safety claims will proceed against Correctional Officer Yekel in his individual capacity.

(2) Within twenty-one (21) days of this Order, the Clerk shall ascertain from the Department of Correction Office of Legal Affairs the current work address for Correctional Officer Yekel and mail a waiver of service of process request packet to him in his individual capacity at his current work address. On the thirty-fifth (35th) day after mailing, the Clerk shall report to the Court on the status of the request. If the defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service and the defendant shall be

12

required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(3) Defendant Yekel shall file his response to the complaint, either an answer or motion to dismiss, within sixty (60) days from the date the notice of lawsuit and waiver of service of summons forms are mailed to them.  If the defendant chooses to file an answer, he shall admit or deny the allegations and respond to the cognizable claims recited above.  He may also include any and all additional defenses permitted by the Federal Rules.

(4) Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within six months (180 days) from the date of this order. Discovery requests need not be filed with the court.

(5) All motions for summary judgment shall be filed within seven months (210 days) from the date of this order.

SO ORDERED at Hartford, Connecticut this 5th day of January, 2017.

_____/s/_____
VANESSA L. BRYANT
UNITED STATES DISTRICT JUDGE